in our country. This court just heard some arguments regarding the scope of an arbitration clause. In this case, one thing is clear, that parties cannot be compelled to arbitrate a dispute absent an agreement to do so. Recently, the Texas Supreme Court reminded us what we already know, which is that arbitration agreements are simply contracts. An arbitrator's power, therefore, is derived from and limited by the expressed terms of the contract. To no surprise, the Texas Arbitration Act then mandates that a trial court shall vacate an arbitration award when the arbitrator exceeds his powers. Your Honors, that's exactly what happened here. In this case, my client, the Amberson Law Firm, had an engagement letter with the McAllen parties. Actually, three engagement letters. Those engagement letters, for legal representation, had a fee dispute provision that said we're going to arbitrate any fee dispute arising from the provision of legal services in specified litigation. Simple standard provision. The arbitrator rendered an award on that fee dispute. That is not the subject of this appeal at all. But the arbitrator went further. The arbitrator then rendered an award in a completely unrelated real estate transaction that had nothing to do with legal representation, that had nothing to do with the payment of legal fees. In doing so, the arbitrator exceeded his powers, and under the expressed language of the Texas Arbitration Act, the trial court should be vacated. Counsel, you obviously know the response to that is that this is not exceeding powers under A-3. This is an A-4 matter where you've already had a determination when the matter was referred to arbitration. I find the Texas Arbitration Act unclear as to how this is to work, but it does seem to me the more directly applicable provision is A-4. When it's talking about — it says generally there's no arbitration agreement, your argument is there's no arbitration agreement as to one claim, so you at least have that. But deal with the problem of A-4. Yes, Your Honor. It's an interesting and creative argument. It basically — I don't think it's creative. It's statutory-based, and it's a pretty good argument. So why don't you tell us what you think of it? Yes, Your Honor. The cases that look at A-3 — in fact, the Gulf Exploration case that talked about why mandamus is not available generally for an order of compelling arbitration. One of the reasons why the Texas Supreme Court said that in the Gulf Exploration case, which was a 2009 Supreme Court case, was that there is a right of appeal, and it cited A-3. So it cited A-3 because the argument that an arbitrator decides an issue that was not under his authority is exceeding his powers, is by definition exceeding his powers. In fact, in the Kemper case, authored by Judge Southwick and joined by Judge Oldham a couple years ago, that case was cited by the district court properly for the de novo standard of review. But you also recognize, Judge Southwick, that an arbitrator exceeds his authority when deciding things that he did not have the contractual right to. So the fundamental issue under A-3 is, did the arbitrator exceed his powers? Did he exceed his powers that are derived from only one source, the contract? So what does A-4 mean, then? And there's a case cited by the McCallum parties — I think it might be pronounced Kriet, K-R-E-I-T — and that's the one that they rely upon heavily to address your point, Judge Southwick. They said, wait a minute, that court said an argument about no agreement to arbitrate because the words no agreement to arbitrate appear in A-4 must necessarily fall here. Now, the Kriet case involved a case where that provision certainly applies. And I submit that the A-4 is really dealing with someone that starts an arbitration, doesn't object at all about not having an agreement to arbitrate, and then only after do they come to the court. And A-4 says you can't lay behind the log, okay? But the argument that they're making, Judge Southwick, to address your question, is that once a court orders or compels an arbitration, then an arbitrator is immune and can decide whatever he wants, that there's no — there's no accountability for an arbitrator. I'm not sure that that's right. I mean, is — I think, though, as I understand the argument, is that once the case is referred by the State trial court to the arbitrator, anything within the scope of that referral satisfies A-3. Yeah, Judge, and that doesn't give you the right of appeal. In other words, the trial court does not decide the power of the arbitrator. The arbitration agreement does, plain and simple. What is your best case for the proposition that there is an A-3 basis for vacature where the arbitrator does exactly what the State trial court referred to it? Well, there are several, I guess. Well, the Gulf Exploration case mentions in head note — I think it's 8 and 9 — discusses the availability of an A-3 reversal, OK? And did the arbitrator in that case exceed the referral from the State trial court? Did the — well, it was a different scenario. That's what I'm trying to get at, is what would be — I take it it's undisputed that the arbitrator did exactly what the State trial court said, please arbitrate this. Correct. The arbitrator did that, and the arbitrator recognized that the arbitrator was not being asked to make that call. So the call was made by the trial court. The arbitrator went on. In fact, in the award, specifically said, I find that the Amberson parties have specifically reserved this issue, this objection, as to whether this dispute was properly before me. And so under their theory then, the Amberson parties, as soon as it was referred, lost the ability to complain about that decision. And that just can't be the law. There is no law — there is no law in the books that says that. In Crate, it was — It's clear under the FAA that in order to compel, at least as interpreted by the Fifth Circuit, that actually, in order to compel, if you think it's overbroad or whatever else, you need to wait until the actual arbitration is over, and you can raise those claims on subsequent appeal. That language is not as — nearly as clear, it seems to me, under the TAA, as to what — as to how this is perceived, and I think your case law is thin on how this ought to operate. Now, the Texas Act is based on a uniform act, and subpart three of the act says, the statute that we're dealing with, uniform interpretation. This chapter should be construed to affect its purpose and make uniform the construction of other states' law applicable to arbitration. I don't think either side is as focused on that and has given us how other states have interpreted very similar language to this that's in the uniform act, the older uniform act, Texas hasn't adjusted. Do you have any response? Has — have you pursued how this language of A3 versus A4 or similar concepts have been treated under the adoption of uniform acts in other states? Let me start, Judge Southwick, by saying I agree with you that the case law in Texas is sparse on this issue. In other words, it would be great to have some guidance directly from the Texas Supreme Court about is there an ability to challenge an arbitrator's award for lack of an agreement to arbitrate other than in A4? Because A4 is very specific. It is laying behind the log. It is saying, well, there hasn't been a court determination. And this is kind of — this is the gotcha that's created by the McCallan arguments. In A4, if there's been a court determination, it means you can't — adverse — it means you cannot, according to the McCallans, challenge the arbitrator's decision on that issue. Okay? On the other side, they're saying, by the way, you have to take it up on mandamus. But the case law is clear under Gulf Exploration and Perry Holmes that mandamus is not available. So it does create the strange situation that cannot be the law, that once the trial court refers something to an arbitrator, even if that was beyond the scope, that you don't have a right to mandamus, and then you can't appeal. The other thing in direct response, Judge Southwick, to your question is how does the Uniform Act deal with this. It deals with it in the section 171.098, which is the appeal provisions. So the Texas Arbitration Act says you can appeal an order denying a motion to compel arbitration immediately, interlocutory appeal. It does not have the mirror image. In other words, there is no interlocutory appeal, and, in fact, there's no mandamus subject to a small exception not applicable here. There's no right to an interlocutory appeal of an order compelling arbitration. Why? It's because public policy, as stated by the Supreme Court in Perry and Gulf, encourages arbitration. But if you look back at 171.098, Your Honor, it says what can you appeal? You can appeal an order confirming or denying confirmation of an award. However, the list of what may be appealed under the Texas Arbitration Act under 171.098 does not include the ability to ever appeal an order compelling arbitration. So the only avenue is what we have done here and what litigants routinely do. You appeal an order confirming the award and denying a motion to vacate. That would be the only way that could be reviewed, and that's exactly what we've done here. And that makes sense. As Judge Salfik, as you said in the Kemper decision, you said, hey, we've got to see, did the arbitrator exceed his authority that was given to him by the party's contract? And we're going to do that in a de novo review when it was the trial court as opposed to the arbitrator who made that decision. Precisely the case here. Jody James is a great case, right on point. It doesn't Would Jody James decide it under the Texas Arbitration Act or the Federal Arbitration Act? The Federal Arbitration Act. And is the Federal Arbitration Act an issue here at all? It's not. It's only helpful because the procedural posture of Jody James is a case where there was an order from the trial court. But, I mean, it seems that if the Federal Arbitration Act is not an issue and the Federal Arbitration Act offers different obligations and remedies, then I'm not sure why we would talk about it at all. Only to see that, for example, the Gulf Court expiration, a lot of times these cases don't even decide if they're arguing it under the Texas Arbitration Act or the FAA. They usually cite both. But Congress could give you different remedies to vacate an arbitration award than the Texas Legislature, obviously. Absolutely. And so maybe the Federal Arbitration Act offers exactly the remedy that you're asking for and maybe Texas didn't. And respectfully, the Texas Legislature, I don't think you can read the Texas Arbitration Act to say the Texas Legislature gives you no right ever to review an order compelling arbitration, even if that order gave the arbitrator powers beyond the party's agreement. But that is the position being taken by the McCallum parties. Because if you can't complain under A-4 ever if there's an order compelling arbitration, and that's the argument, if you can't ever complain when there's an order compelling arbitration, then how are you supposed to review it? The only argument would be, I've got to take it up mandamus, but the Texas Supreme Court said you can't. Which means that necessarily there must be a way, and the Barsness case, B-A-R-S-N-E-S-S is a case where they said that the arbitrator exceeded his powers under A-3. I completely understand what you're saying. But the Texas Supreme Court has told us very specifically that the only way to vacate an arbitration award, and we're bound by this, is something that is in these statutory provisions. And so we're not interpreting the Federal Arbitration Act, we're just trying to apply the Texas law that the Texas Legislature has given us using the instructions that the Texas Supreme Court has given us. And so you may have a great argument that the statute should be amended, the Texas Supreme Court should have a different standard for appealing these things, but we're sort of stuck with it, aren't we? I don't think so, because I think we're supposed to read the statute on its face. And so what does A-3 mean when it says that an order confirming may be vacated when the arbitrator exceeds his powers, other than necessarily the arbitrator did something contrary to the source of his powers, that is the party's agreement to arbitrate? Here is the issue. Under the McAllen's argument, as adopted by the District Court, and they're using Gumbel, right? And Gumbel certainly is not good law on the mandamus point. Gumbel was decided before Perry and before Gulf Coast. But under that theory, there is every litigant in the state of Texas, when being ordered to compel to arbitration, must now necessarily file a mandamus or face malpractice. Because if the reading of this statute is, once it's compelled, you have no right of review, which I don't think it can be, then it's going to result in the jamming of the courts prior to arbitration that public policy, the Supreme Court, and this Court says is exactly the opposite. And so therefore, the idea is that A3, to be given meaning, A3 must necessarily mean you can challenge when the arbitrator goes beyond the powers. I know this isn't the paradigmatic case questioning whether the arbitrator exceeded his power, but I will . . . my experience in the federal arbitration cases is that we take a very lax view of reversal on that basis. So if one is under the FAA and, or, I mean, just to your point that every case is going to clog up the courts, I don't think that's so just because we give such huge scope to say in some cases do go beyond the scope of their authority. Yes, Your Honor. And then we don't vacate the awards. And I think in this case, even the arbitrator, as evidenced by his order, had doubt about whether this unrelated real estate transaction fell into the fee dispute. Well, this isn't the ordinary fact, right? Yes, Your Honor. And I'll reserve my time for rebuttal. I see it's . . . Yes, sir. Thank you. Mr. McCallum. May it please the Court, David Monpaugh and David Pritchard, on behalf of the McCallum . . . I'm so sorry. Monpaugh. Yes. So, first, I'll address why 88A3 cannot serve as a basis for vacating the award in this case, discuss why Amberson has waived his complaint regarding Cannon Grove, and then discuss why the claims are within the scope of the arbitration provision. 88A3 does not apply in this instance. Under the Texas Arbitration Act, who makes the decision about whether a particular claim is sent to arbitration matters. If the trial court refers a claim to arbitration, then the complaining party must appeal that order. If the arbitrator makes the decision, then the award may be subject to vacatur under Section 88A if certain statutory requirements are met. But by its own terms, the statute does not apply to a complaint that a trial court improperly referred a case to arbitration. That's important here because Amberson admits that he is only attempting to vacate the award under 88A3. He's explicit in that, in his brief, that he is not appealing the referral order itself. He's all in in 88A3. But because that statute doesn't apply, for reasons I'll explain, the bankruptcy court correctly denied the motion to vacate. So Section 88A is the exclusive grounds for vacating an award, and under only one of those provisions under 88A deals with the lack of an agreement to arbitrate, and that's 88A4 with its three components, no agreement to arbitrate, the issue was adversely determined in a trial court proceeding, and the party didn't participate in the arbitration hearing without the objection. And so in this regard, the Texas Arbitration Act does differ significantly from the Federal Arbitration Act because Section 10 doesn't have a comparable provision. And so applying the rules of statutory construction in Texas, we have to presume that the legislature included each word in the statute for a purpose and that it included or omitted words for a purpose. So here we presume the legislature had a reason for including the phrase no agreement to arbitrate in A4, but omitted it from A3. So really what it boils down to is Section 88A distinguishes between vacature based on exceeding authority versus no agreement to arbitrate. No agreement to arbitrate is an argument about the absence of power. In contrast, exceeding powers presumes power and presumes the existence of an agreement to arbitrate. So if, for example, an arbitration clause stated that the arbitrator could not award exemplary damages, but in their award they do that, then that would be an example of the arbitrator exceeding powers. But by arguing no agreement to arbitrate equates to an arbitrator exceeding its powers, then Amberson is attempting to force the square peg of 88A4 into the round hole of 88A3. And that doesn't work under Texas law. And that gets us to the previously mentioned Cright versus Brewer and Pritchard case and the Penn Hollow Custom Homes case. And these are the only two cases in Texas that have squarely looked at the issue of whether or not when the complaint is no agreement to arbitrate, does that fall under A3 or A4. And as the court in the Houston Court of Appeals stated in Cright, when the essence of the position is no agreement to arbitrate, then we conclude that this ground for vacature is properly considered under A4 rather than A3. That's at page 242 of the opinion. And incidentally, both the Cright case and the Penn Hollow Customs Homes case from the Dallas Court of Appeals that also reached the same conclusion, those were petition denied cases. So the Texas Supreme Court has at least had an opportunity to see this issue come up before they didn't find anything that they felt needed correction in those cases. In their reply brief, the Amberson party's attempt to distinguish Cright by arguing, well, in that case, arbitration was initiated without court referral. And I don't think that matters as to this particular argument, because first, how the case got to arbitration doesn't affect the construction of the statute. And second, the fact that the case was initiated in arbitration just means that in that particular case, the party that was complaining about the adverse award could satisfy the second — excuse me, the first requirement, or the second requirement of 88A4 because the matter hadn't been decided by a trial court. The construction of Section 88A as set out in Cright, I think, is important for two reasons. First, again, the Amberson party has never requested vacature under 88A4, either in the bankruptcy court, the district court, or on appeal. Again, they take the position it simply doesn't apply. But second, even if Amberson had requested vacature under 88A4, he wouldn't be able to prevail under it because, again, he can't satisfy that second element that the issue had already been decided before in a prior trial court proceeding. And that leads to the care versus genetic direction case from the Dallas Court of Appeals that is also cited in the response. And in that case, the court concluded that the losing party at arbitration could not prevail under 88A4 because they — because of genetic direction's motion to compel prior to granting the motion. Therefore, we conclude miscare did not satisfy Section 88A4's requirements. So in that case, the losing party incidentally also specifically appealed the referral order. And that's the remedy for them, is they should have appealed the referral order itself. They could have also, in addition to their motion to vacate — if they had additional proper grounds to vacate the award, they could have raised those. They didn't. Let me ask you about the limitations under 098 — I guess 171098 — about what can be appealed and doesn't include orders compelling arbitration. The issue in cases from the Supreme Court, such as Palacio's Gulf Exploration, has to do with whether mandamus would be appropriate as opposed to interlocutory appeal. Are you saying they had the right to appeal or at most a right to a mandamus after the — at the time of the referral order? At the time of the referral order, they had the option, I believe, of mandamus, that while — Isn't that very limited under — It is very limited, but there are exceptions that are made to that, and there are — Let me ask you why it's limited under 098, please. No, Gulf Exploration. And it says, if a trial court compels arbitration — and I'm not sure if this is a TAA or FAA case. The facts, as set out, don't make it clear, but it is Texas Supreme Court — if a trial court compels arbitration when the parties have not agreed to it, that error can unquestionably be reviewed by final appeal, which is what they're trying to do, obviously. In Perry-Holmes v. Cole, which is their decision from 2008, we rejected the argument that an order compelling arbitration must be reviewed before arbitration, noting that for many years this Court has reviewed such orders after arbitration. Now, I don't know how all that fits together, and maybe it's talking about the FAA. Are you familiar with those cases? Are you familiar with — did I say Perry-Holmes v. Cole? I am familiar with those cases, Your Honor. So what's that about? It sounds as if the Supreme Court is saying, come on up. Well, in Perry-Holmes, incidentally, that case I know was under the FAA and not the TAA. I'm not sure off the top of my head on inter-agreed goal fix. Well, it's trying to make matters, it seems to me, consistent, and the Texas Supreme Court has said this. And there's a Supreme Court justice named Willett, I think it is, that a few years ago made that point in an incurring opinion dealing with arbitration, saying that is a goal of the FAA is possible. Statutorily, it may not be possible here, but nonetheless, it does seem to be a direction that way. Are you saying that the Texas Supreme Court in Emory Gulf was not talking about the right to appeal under the TAA? I mean, that seems to be the very common sense answer, and it's the answer in federal court primarily, of why you don't need mandamus up front. But if that's not the answer, if there's no final appeal, then you do need mandamus up front. Our position would be that while mandamus was not required here, it was an available option that they could have taken. But if it's not required, how could they get it addressed? If they didn't do mandamus, if it's not required, if that's what you mean, when do they get this issue addressed? What they also had to do, though, was they had to actually appeal the referral order itself. They mentioned— And how could they do that? 0.098. Again, that's dealing specifically with about the award itself, but you can still appeal the referral order. In fact, that's what happened, I believe, in the Perry Holmes case. And can you help me understand what language in 0.098 you're looking at that says you can appeal the referral? Because I see that you can appeal the denial, and I can see that you can appeal the granting of an application to stay arbitration. But the inclusion of these things makes it sound like the Texas legislature is explicitly denying them the right to appeal the referral order. From the case law that we've seen, we have seen examples, including the Kerr case that I just mentioned, that does allow the appellate court to review the referral order itself. Well, the whole reason for Inouye, Gulf, and Palacios, it seems to me, is to say mandamus is the only available remedy. And you look at whether there's a sufficient reason for it in a particular case. If appeal was a matter of right, it seems like these mandamus cases are beside the point. They shouldn't even exist. Yet they do, and we believe that, you know, we can make the request that, or make the assertion that they should have the opportunity to challenge that on mandamus, but chose not to do so. Rather, they chose to sit on the award, or sit on the ruling, and see first what happened in arbitration. And if they got an award that they liked, then they wouldn't be complaining about that the arbitrator exceeded their powers. Let me make sure of a procedural point here, and I'm sure it's all over the briefing. There are two orders from the court referring, an initial order and maybe one on re-hearing, very thin, with no explanation. Was this issue presented to the state district court that the arbitration agreement doesn't cover both of these issues? Yes. At the state district court, the only issue that was in dispute about what was subject to arbitration was the Cannon Grove matter. So there's an acceptance of arbitration by McAllen on the one issue but not on the other at the state district court? Emberson. Correct. I'm sorry? Yes, that was the only, everything else was agreed was subject to arbitration. Okay. Was that issue raised again in front of the arbitrator, that you only have, you shouldn't be arbitrating both of these? They presented an objection at the commencement of the arbitration, and so, and we agreed that they have objected to this, and they have done so several times. Our position, though, is that they need to go beyond just objection, pardon me, objecting, and actually seeking to seek review of the referral order itself, and here they haven't done that. So to analogize it, say, for example, you have a pretrial ruling on a Daubert motion and you lose on that, you go to trial, you lose, and then you appeal on the basis of that the trial court failed to grant you a motion for judgment for a directed verdict. Well, you still needed to actually challenge the Daubert ruling as well to preserve that issue. Here, they haven't done that. All they've done is sought to vacate under 88A3, which again does not apply because 88A4 controls on this issue. I will say, depending on how we come out on these issues of whether there's a free arbitration right to appeal, mandamus seems quite limited by the Texas Supreme Court, at least I, for one, will be open to the issue of whether this exceeds the powers, and that comes down to what you say in your briefing, that the very order by the district court creates the power, even though arbitration is strictly a contract matter. And what the parties have agreed to, your position has been, I think, and you certainly correct me, that the order creates the power insofar as the right to complain about the arbitrator exceeding his power, that's what that means. Is that a fair statement, if you understand what my statement was, that the referral order creates the authority, even if the arbitration agreement did not? Creates the power, and it therefore cannot be exceeded if you do what the referral order says? The referral order creates the power for the arbitrator to go forward. The agreement itself sets out the parameters of that power. That power can be extended or the arbitration clause can be extended through various doctrines, like, for example, non-signatories could be subject to arbitration. Answer his question. I don't see that. I'm just trying to get out. He's saying. If 171.08, whatever it is, 088A, some subpart, says you can appeal if the arbitrator exceeded its powers, and I'm saying if, on one hand, the only power of an arbitrator must come from contract. In other words, could the arbitrator have given him the, given the, could the court have given the arbitrator the power to resolve Cannon Grove, even though the parties never did? Yes, that's what I'm asking. Okay. Well, yes, we think that that was possible under the Thomas v. Cook case. If the trial court made that determination, then it could be, then the order has been referred, and then the arbitrator could consider that. Now, they were going to make an issue about whether or not it was properly referred, and that gets us back to whether or not that falls under 88A3 or 88A4. Well, it can fall under 83 under your definition because that's exceed powers, and under your definition the arbitrator hasn't exceeded his powers because it was referred to him. Correct. So under 88A4, once the trial court has made the referral decision, then your remedy in that instance then is to then appeal that order, and that wasn't done in this case. Here, again, the Texas legislature chose to adopt the one ground for vacating an arbitration award for lack of an agreement to arbitrate, and that only applies if the trial court did not refer the claims to arbitration. That Amberson cannot satisfy the requirements of 88A4 does not change the fact that it is the only statutory basis for vacating an award, and this limitation demonstrates that if a party had an issue with an order compelling arbitration, then its complaint is with that order, and it needs to challenge that order rather than seek vacatur under 88A3. But, again, that wasn't done in this case. I do want to briefly discuss why the Canning Grove matter is within the scope of the arbitration provision. As the Court alluded to earlier, arbitration provisions are broadly construed given the strong public policy in favor of arbitrations, and so matters need only touch upon the subject matter of the agreement containing an arbitration provision, and a valid agreement to arbitrate applies unless it can be said with positive assurance that an arbitration clause is not susceptible to an interpretation that would cover the disputed issue. Here we had a broad arbitration provision that covered any fee dispute arising out of this agreement, and those types of provisions are broadly construed as, for example, we discussed in the Martel v. Fame-Compte case from the Tyler Court of Appeals from 2019. And certainly if a claim is subject to arbitration, then any defenses to that claim are also subject to arbitration. And here it's important to note that Canning Grove was submitted both as an affirmative claim for relief but also asserted in defense of the breach of fiduciary duty was asserted as an affirmative defense to the contingency fee claim. And so a claim for a contingency fee is subject to the defense of breach of fiduciary duty. Here we pled breach of fiduciary duty broadly as a defense that can be found at page 3902 of the record. And so because of that, we were allowed to – that would be a basis for considering the Canning Grove matter with respect to this case. And in this instance also, there was definitely evidence put on of Amberson's breach of fiduciary duty with respect to Canning Grove that the court – that the arbitrator was allowed to consider. We, for example, put on evidence through our expert, Jim McCormack, who testified that Amberson's undisclosed and unconsented to conflicts of interest with respect to the Canning Grove transaction were a further clear and serious breach of fiduciary duty that was also an additional ground for finding that the contingency fee agreement was unenforceable. So it was within the broad scope of the arbitration provision that Amberson drafted. So to wrap up, Amberson has been exploiting his clients since 2005. That's the – we have the millions of dollars in fraudulent expenses and misrepresented loans. And those efforts are continuing because while we have a judgment against Mr. Amberson for all these amounts, he is now trying to get out from under that. He is trying to discharge those amounts so that McCallan can never recoup a penny of what was stolen from him. And so – and this effort – this particular appeal is a part of that effort because what the Canning Grove issue is all about is whether or not we're going to have a trial in front of the bankruptcy court about whether or not Ambers – or McCallan supposedly gave $4.5 million as an outright gift simply to defer the payment of capital gains tax. It makes no sense. Amberson can't vacate the award under 8883 because it doesn't apply. He's waived any complaint about the state court referral orders and the claims are within the scope and we would ask the court to affirm the final judgment. Thank you, sir. Okay, Mr. Davis. Yes, Your Honor. Judge Southwick, I'd like to first address a question you had of my colleague, and that is were objections raised at the trial court? And I had a visual, but the answer is yes. Objections were raised at the trial court not once, but twice. When there was an agreement to the arbitrator, it was specifically subject – Two orders referring were after these objections? Yes, Your Honor. Actually, it was part of the process. So there was an agreement between the parties to arbitrate the fee dispute, which is not being appealed because of the deference given to that. But from the beginning in the trial court in Hidalgo County, there was a fight over this. There was objections made constantly in the trial court. Then there was objections made in the arbitration. The same objection about breadth. The same objection, specifically about Ken and Grace. I've done some looking at the Uniform Act and re-raising the objection toward the arbitrator may be significant, so I just want to make sure on the facts. And I wanted to say that the arbitrator's award even recognizes that. It said Amberson made a running objection. In fact, I am saying – this is what the arbitrator said – I am saying in my award that I'm not making any finding about this. I recognize the running objection. It was constantly made. In the motion to vacate that was filed in state court and then ultimately renewed in bankruptcy court, the same objection. There has always been a consistent objection that the arbitrator did not have the power under the party's agreement. It has never been waived. And I wanted to be clear about that. The next question I think you had was can the trial court expand? The direct answer to that is no. As this court, as Judge Southwick, you recognize, joined by Judge Oldham in the Kemper case, and as all the cases say, the power is derived from one source, the party's agreement. It is simply a contract. The trial court cannot expand that. So what, according to McAllen, is a party to do if the trial court makes a decision that is wrong? This is the argument that you have to appeal. This is where we get into the trap. Gulf Exploration says in Head Note 8 the following, if the trial court compels arbitration when the parties have not agreed to it, that error can unquestionably be reviewed by final appeal. Judge Southwick, you asked, well, is that, was the court talking about the Texas Arbitration Act or the FAA? Later on in that Head Note, quote, the court said, both federal and Texas statutes provide for vacating an arbitration award by final appeal if the arbitrators exceeded their powers. If an appeal is an adequate remedy for an order compelling arbitration, mandamus must be denied. Which opinion are you quoting? This is Gulf Exploration. In fact, it cites, importantly, Your Honor, the Gulf Exploration case cites A3. It does not talk about A4. It does not say that a trial court can expand a party's agreement. It specifically cites A3. And so that discussion is in the footnote. Can I ask you a procedural problem? I'm looking at your handout about the objections to the arbitration of the Canning Grove claims. Yes, Your Honor. So I see the state court one, motion to vacate arbitration, and I'm looking at 1331, which is your response to their motion to confirm the arbitration award in state court. Am I understanding the procedural history of this case correctly, that what happened was before the court in Hidalgo County could rule on these various motions and responses, your client declared bankruptcy, and then A&R took this running objection, I'm sorry, this state court motion to vacate and just moved it to the bankruptcy court? That's exactly right. So after the arbitration, there was a motion to confirm filed and a motion to vacate filed in Hidalgo County. After the bankruptcies, those were taken first to the Southern District and then transferred to the Western District, where those motions, as here in the diagram shows, were renewed in front of Judge Gargata in the Western District. And so you never got a state court ruling on your motion to vacate. Correct. And the motion to vacate that is this middle one here, this 1331, ROA 1331, is only under A3. Only under A3 because having already been compelled by the trial court, A4 was not applicable. And so we moved under actually, according, pursuant to the statute, the statute that says you're supposed to do when the arbitrator exceeds his award. Otherwise, the argument is every time it's compelled, you're out of luck. And that's the argument that's being made. You should have appealed. Before we leave that, I've got a few seconds. The site 1331 and 2297 show that this issue was talked about in front of the district court and the bankruptcy court. But it cannot be that you can't have mandamus under Gulf or Perry. It can't be that you don't have a direct appeal under the statutory appeal and that you therefore have no remedy. If anything, this is a good case to certify to the Texas Supreme Court and say, what's going on here, guys? My only question here is why didn't someone move to lift the stay and pursue your appeal in state court? I mean— Well, Your Honor, because the appeal properly lied here. So once the bankruptcy court issued its order confirming the award, and once that was appealed— I'm back before then. I'm back—you're back in the state court. You got an adverse award, and then you filed bankruptcy. Your client did, as do many scofflaws. And your client could have appealed that arbitration, could have said to the bankruptcy court, lift the stay and let me pursue that appeal, right? I'm not even sure since you're the debtor you would have had to do that. What am I missing here? Well, you can only appeal—according to the statute, you can only appeal from exactly what we appealed from. That is the order confirming the award. Whether that happened in state court or whether that happened in federal court, that's exactly what's being appealed. It is the only appeal that applies statutorily to this case. Well, if you're saying this is such a difficult question of state law, then it might have been better to let the state courts adjudicate it, in which case the bankruptcy court would have been bound by that, which it apparently felt it was anyway. Yes, Your Honor. And I see my time has expired. Okay. Are there any further questions? No, sir. Thank you, Your Honor. No, sir. The court will stand in recess until 9 o'clock tomorrow morning.